**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| TERRANCE WARNER, | * | |
| Petitioner, | * | CASE NO. 4:05-CR-30 (CDL) |
| vs. | * | 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

**REPORT AND RECOMMENDATION**

Terrance Warner was indicted in this court on August 17, 2005 (D-1) and charged with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a) in Count I, and Distribution of Cocaine in violation of 21 U.S.C. § 841 (a) in Count II. After numerous Motions and trial preparations, on June 13, 2006, Petitioner Warner entered into a Plea Agreement (D- 123) with the Government, each page of which he initialed and entered his signature at the end thereof, signifying that he had either read or had read to him the entire document, understood, and agreed to its contents. In Section (3) of the Plea Agreement, Petitioner Warner stipulated:

> Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(e), Federal Rules of Civil Procedure, as follows:
>
> A) The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count Two (2) of the Indictment. Count Two charges defendant with unlawfully, and intentionally distributing a Schedule II controlled substance to wit: a mixture or substance containing a detectable amount of cocaine; all in violation of Title 21, United States Code, Sections 841(a)(1),

and 841(b)(1)(C).

(B) The defendant understands that defendant's plea of guilty to Count Two, as set forth in Subparagraph (A) above, will subject defendant to a sentence of a maximum of twenty (20) years imprisonment, a maximum fine of $1,000,000 or both, and a term of supervised release of three (3) years.

(C) The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office. The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office, which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D) The defendant fully understands and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a presentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

On October 5, 2006, a final Pre-Sentence Investigation Report was filed by the Probation Office and copied to the parties. (PSI). Computation of Petitioner's Offense Level pursuant to U.S.S.G. § 2D1.1(a)(3), as reported at ¶¶ 15 - 25, resulted in a Total Offense Level of **29**. In Part B of the PSI, the investigation of Petitioner's Criminal History revealed that Petitioner Warner had a prior drug offense conviction (PSI at ¶ 36), a prior conviction for attempted murder (a crime of violence) (¶ 42), and a crime of violence, Battery of a Law Officer (¶ 45), all occurring while Warner was a juvenile, but tried as an adult. Petitioner Warner was found to have committed another crime of violence in 1996 and imprisoned for over four years. (¶ 51). Warner was also convicted of Possession of Cocaine With Intent to Deliver in 1997 for which he was imprisoned for more than four years. (¶ 55). Petitioner was on probation when he committed the drug offense for which he was indicted in this court and to which he pled guilty. Warner's Criminal History Computation totaled a score of 14, established a criminal history of category **VI**, and a *career offender* status pursuant to U.S.S.G. § 4B1.1(b). (¶¶ 61-63). The advisory Guideline sentence range found in the PSI was 151 to 188 months imprisonment. (¶ 86).

After hearing objections to the PSI , a plea for leniency from Petitioner's Warner's counsel, and acknowledging that the Government had filed a U.S.S.G. § 5K Motion for reduction of sentence for substantial assistance, the Court sentenced Petitioner Warner below the guideline range to 137 months imprisonment and dismissed Count I of the Indictment pursuant to the terms of the Plea Agreement. (D-142).

Petitioner filed a direct appeal which was dismissed on February 15, 2007, pursuant to waiver of appeal provisions of his Plea Agreement. (D- 168). Petitioner then timely filed the subject Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 on June 28, 2007, in this court. (D-177).

In his § 2255 Motion, Petitioner Warner made claims of ineffective assistance of counsel, and breach of agreement by the Government, as a result of which he also contends that his guilty plea was not freely and voluntarily given. A claim of unreasonable sentence was abandoned. (D-209 at 5, 60). An evidentiary hearing was held on March 17, 2008, for determination of the factual disputes raised in Petitioner's Motion. (Transcript, D-209).

Petitioner's **Ground One** claim of ineffective assistance of counsel complained that:

> Counsel advised the defendant that it was in defendant's best interest to accept the Government's plea agreement which states, "If defendant pleads guilty to Count 2 of the Indictment, that the Government agrees to move the court to dismiss Count I of the Indictment. Counsel was ineffective in his Job duties in failing to throughly research and review the defendant's prior arrest record and explaining to the defendant that by accepting the Government's plea agreement that it could possibly place the defendant in a position to be sentenced as a career criminal. To which the defendant was sentenced as a career criminal.

First, there is no dispute that the Government did move the court to dismiss Count I of the Indictment and that Count I was, in fact, dismissed. (D-142). Secondly, from the uncontested convictions reported in the PSI, Petitioner Warner was, at all times relevant to his present sentence, a career criminal under U.S.S.G. § 4B1.1(b). Counsel's alleged failure to detect that fact did not effect it being discovered by the Probation Officer who prepared

4

the PSI for the court. Petitioner cannot show how counsel's alleged failure to discover his career offender status actually prejudiced Petitioner.[1] Factually, however, there is a dispute about whether the Government made and breached a specific sentence promise in disregard of Petitioner's career offender status. Petitioner contends that his counsel did not advise him of his career offender status at the time of his guilty plea, and if he had been so advised, he would not have pled guilty, but would have gone to trial.

Prior to Petitioner's Plea Agreement and guilty plea, a pre-trial hearing was held on February 1, 2006 (D-150), at which time Petitioner Warner was before the court with his counsel, Mr. Casto, and AUSA Mr. Hyde. Mr. Hyde asked the court to be allowed to put on record that the Government had extended Defendant Warner a Plea Agreement which he had rejected, to wit: that the Government would seek to dismiss Count I in exchange for Warner's guilty plea as to Count II; that the Government would file a 5(k) motion on behalf of the defendant in the event he cooperated against certain other individuals charged in these offenses; but that upon a conviction of Count I at a trial, Warner would face a mandatory minimum sentence of ten (10) years, and that he would face a maximum sentence of twenty

---

[1]To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). Under *Strickland* Petitioner must show: (1) that his counsel's representation was deficient; and (2) that this deficient representation prejudiced Petitioner. *Strickland,* 466 U.S. at 687; see *Baxter v. Thomas,* 45 F. 3d 1501, 1512 (11th Cir. 1995). The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S. Ct. 366 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same, the attorney's conduct must be shown to have fallen outside the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel need only provide a client who pleads guilty with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Wofford v. Wainwright,* 748 F. 2d 1505, 1508 (11th Cir. 1984).

(20) years as to Count II with no mandatory minimum. (D-150 at 6 - 7). Mr. Hyde also advised the Court in Warner's presence that the Government would keep the offer open until it had a chance to perhaps recalculate the sentencing guideline range, inasmuch as he did not have a criminal history on Warner that he believed he could rely on. *Id.* at 8 - 10. The court stated, "Well, that's the Government's right. Of course, the Court has no obligation to follow any recommendation that the Government makes in the plea agreement." *Id.* at 10. The Court had inquired as to whether the Probation Officer present had made a preliminary estimation of the guideline range, to which the Officer answered, "We estimate 151 to 188 months, and that would be based on all the counts that are in the indictment." *Id.* at 8. The Officer also responded to the Court's inquiry whether dismissing Count I would change the estimate, to which the Probation Officer answered, "It possibly could, yes sir." *Id.* at 8. The Court then asked Mr. Casto, Warner's defense counsel, whether he had made some estimate as to what he thought the defendant's guideline range would be before the 5(k) motion was considered, to which Mr. Casto answered:

> I have, Your Honor. The report that was provided to us from the U.S. Probation Office shows a number of arrests with no dispositions on some charges. **We expect that he would potentially be a career offender.** And that is one of the issues with Mr. Warner in this case. But I have gone over that with him, and we've reviewed the guidelines, whether he would be or would not be a career offender, and where he would stand. So he's been fully advised and aware of the advisory guideline sentence where he might fall with this plea agreement. (emphasis added). *Id.* at 8 - 9.

It is clear from the transcript of said Pre-Trial Conference of February 1, 2006, that

6

Petitioner Warner's attorney was aware of the possibility of career offender treatment, and there is no logical reason to believe that Petitioner Warner was not also aware of that possibility. When asked at the evidentiary hearing on Petitioner's § 2255 Motion whether he had discussed the application of the career offender guideline with Mr. Warner, Mr. Casto answered unequivocally, "I'm sure I did." (Hearing Transcript, D-209 at 12). Mr. Casto was asked if he had asked Mr. Warner about his prior criminal history, to which he answered, "I did." (D-209 at 18). Mr. Casto was asked if he had a firm grasp of whether or not the career offender guideline would apply prior to Mr. Warner entering his plea of guilty, to which he answered:

> "No. And I can tell you why is because Mr. Warner never advised me of some of his criminal background that was not originally notified or given to us in the preliminary Presentence report by the probation office, and some of the offenses I was under the impression was they occurred when he was a juvenile, and potentially wouldn't be applicable."

(D-209 at 19). At page 31 of the evidentiary hearing transcript (D-209), Mr. Casto stated in regard to the juvenile offenses that, "Mr. Warner told me that he was treated as a juvenile." At page 35 of same, Mr. Casto states, "Mr. Warner had omitted telling me of two of [his career criminal qualifying] offenses."

Mr. Warner's testimony is in conflict with the transcript of the February 1, 2006, Pre-Trial Conference, and is incredible in every legal sense. On direct examination at the § 2255 evidentiary hearing, the following colloquy occurred:

> Q. Now, did Mr. Casto tell you that you might be subject to the career offender guidelines?

7

> A. Yes, ma'am. But that was after – – that was after the Presentence investigation came back.
>
> Q. I'm talking before you even entered your plea – –
>
> A. No, ma'am, no, ma'am.
>
> Q. – – had you ever even heard the phrase career offender – –
>
> A. No, ma'am.

(D-209 at 69, 70). Petitioner Warner was present at the Pre-Trial Conference when his attorney, Mr. Casto, made the statement, in response to the court's inquiry about an estimation of a sentencing range, that, "We expect that he would potentially be a career offender." It is inconceivable that Warner was not listening, and that he had never even heard the phrase *career offender.*

Early in his testimony at the § 2255 evidentiary hearing (D-209), on direct examination, Petitioner Warner was asked what was his reasoning for rejecting the plea agreement as stated at the Pre-Trial Hearing on February 1, 2006, to which he unabashedly answered, "Because I wasn't guilty." *Id.* at 63. Later, his counsel asked him:

> Q. All right, Mr. Warner you pled guilty to count two . . . And you were guilty of count two?
>
> A. Yes, ma'am.

*Id.* at 78. Petitioner attempts to explain that his rejection of the original Plea Agreement was because he was not guilty of Count I, but the original plea agreement contained the Government's agreement to have Count I dismissed, as has been shown heretofore. *Id.* Petitioner's contradictions adversely affect his credibility.

On direct examination the following colloquy occurred between Warner and his hearing counsel:

> Q. You know going into your sentence hearing that the government is not going to ask for a specific sentence, or that the plea agreement doesn't say a specific sentence?
>
> A. Right.
>
> Q. You know the judge has the discretion to decide what the specific sentence should be?
>
> A. Yes, ma'am.
>
> Q. Now, does Mr. Casto tell you what he's going to say or what he's going to argue for, or anything along those lines?
>
> A. No, ma'am.
>
> Q. Did you have an expectation that he would present some evidence or argument with regard to the extent of your cooperation
>
> A. The only thing we was both counting on was Mr. Hyde holding up his part of the bargain and what he told me.

(D-209 at 83). Petitioner Warner's testimony at that point indicated that he was more concerned with his claim of breach of promise by the government than he was about his attorney effectiveness. What exactly was Warner claiming that the Government breached?

Petitioner Warner's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255, at **Ground Three,** claims Breach of Plea Agreement and states as follows:

> The Government and the defendant entered into a binding plea agreement and one of the obligations was that the Government

> agreed that if Defendant cooperated truthfully and completely with the Government including being debriefed and providing truthful testimony at any proceeding related to or resulting from defendant's cooperation to make the extent of Defendant's cooperation known to the sentencing court. At sentencing the Judge asked the Government if they had anything to say and the Government replied, "No, Your Honor." So the extent of which the defendant's cooperation helped the Government secure multiple guilty pleas against the major participant in the conspiracy case was never brought to the sentencing court's attention by the Government as was agreed upon in the plea agreement. So all the terms of the plea agreement were not honored by the Government.

(D-177 at 8). Additionally, Petitioner's **Ground Four**, **Reasonableness of Sentence Imposed**, which is no longer being pursued here, should be noted on Petitioner's breach issue. At Ground Four, Petitioner Warner stated:

> Defendant respectfully submits that the district court sentence was unreasonable in light of the totality of the circumstances in connection with this matter. Specifically in consideration that defendant was only convicted for a single count of Distribution of Cocaine and that amount of cocaine distributed was mere nominal. Further, that the district court failed to properly consider the stipulated facts that defendant was a minor participant in the conspiracy charges of the indictment. Therefore, in review of the lengthy sentence imposed by the district court in comparison to the crime in which Defendant was convicted and the factors surrounding the crime itself and the cooperation in the prosecution of co-defendants, Defendant respectfully submits that said sentence was unreasonably high and that the matter should be remanded for further consideration and sentencing by the district court.

*Id.* at 9, 10. The most notable thing about Petitioner's Grounds Three and Four and the entirety of his Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§

2255, is that there is no mention whatsoever of any promise of a specific sentence by the Government which Petitioner Warner belatedly attempts to develop and inject into his claims. The first time Warner suggests any specific sentence promise by the Government is found in his Notice For Entry Of Default (D-194), which he filed on November 21, 2007. At page 2 of that pleading, Petitioner Warner states:

> After being debriefed by the Government in connection with the plea agreement, the petitioner was promised by AUSA Mr. Hyde, that he would "recommend to the sentencing court that the petitioner be sentenced way below the bottom of the Guidelines," preferably 24 months.

It is noteworthy that the Petitioner's quotation marks do not include the phrase, *preferably 24 months*. Also noteworthy is the fact that, *three times* in his testimony at the § 2255 evidentiary hearing, Petitioner Warner makes the same statement almost verbatim. At page 70 at lines 10 through 12, Warner stated:

> Mr. Hyde conveyed to me that he would recommend to the sentencing judge that I be sentenced way below the bottom of the guideline preferably two years.

At page 76 at lines 14 through 17, Warner stated:

> Part of the agreement, he said if I pled guilty to this charge that he would recommend to the sentencing judge that I be sentenced way below the bottom of the guideline, preferably two years.

At page 78 at lines 8 through 11, Warner stated:

> He [Mr. Hyde] just promised me and as well as him [Mr. Casto] that when we came in front of the judge that he would recommend to the judge that I be sentenced way below the bottom of the guideline, preferably two years.

11

A more logical and fair reading of the statement, if, in fact, made by Mr. Hyde, is that he would recommend that the sentencing judge depart downward from the sentencing guidelines, whatever that was found to be, as much as 24 months. In view of the fact that Mr. Hyde did file a 5(k) Motion for reduction of sentence for substantial assistance, and that the court did sentence below the guideline range by 14 months (even though 24 months might have been preferable), by this fair reading, the Government fully delivered upon its agreement.

However, having developed his theory of a specific sentence agreement with the Government, Petitioner Warner got more direct in his testimony. His hearing Counsel asked Petitioner Warner when specifically did he change his mind about the Plea Agreement and decide to plead guilty to Count I, to which he answered, "When I actually changed my mind, would be February the 1st. . . . The first hearing that I had – – the first time that I heard it out of the government, from Mr. Hyde, is when I changed my mind." *Id.* at 79. Counsel asked:

> Q. Did Mr. Hyde tell you that he was not going to recommend a certain number of levels?
>
> A. No, ma'am.
>
> Q. He made a specific – –
>
> A. He said two years.
>
> Q. Two years. Two more years to serve, or two years total, and you'd get credit?
>
> A. Just two years. I'm going to recommend that the judge sentence you to two years.

(D-209 at 79, 80). Nowhere in his testimony does Mr. Casto, who was present with Petitioner Warner and Mr. Hyde on February 1, 2006, make reference to any agreement from the Government for a two year sentence, and Mr. Hyde, in his place in closing comments at the hearing, emphatically denies making any such promise. Petitioner Warner is found to be lacking in credibility in his assertions to the contrary.

Petitioner Warner cannot escape the written terms of his Plea Agreement, which very clearly provides that no agreement not contained therein would be binding on the court and no estimate of any specific guideline range or sentence would bind the court, all of which Petitioner Warner acknowledged to the court at the time of his plea on June 13, 2006. His extensive criminal history made him a career offender, subject to treatment as such pursuant to the provisions of U.S.S.G. § 4B1.1, upon his conviction of the Cocaine Distribution charge in Count II. At that time, nothing, nor any one, could change that fact. Petitioner Warner had made himself a career criminal pursuant to the definitions of U.S.S.G. § 4B1.1.

Petitioner Warner has failed to carry his burden of proving that his counsel was in anyway ineffective, that the Government breached the plea agreement, or that his guilty plea was not freely and voluntarily entered in this action.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Warner's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this

Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 4th day of April 2008.

                                                 S/ G. MALLON FAIRCLOTH
                                                 UNITED STATES MAGISTRATE JUDGE